May I please the Court, Jeff Lewis for appellate. I'd like to reserve three minutes for rebuttal. Okay, watch your clock, please. Thank you. In opposing summary judgment, Lennox offered three buckets of evidence that warrant denial of that summary judgment motion. The first offered evidence that they did not get the denial letter regarding the 2018 loss. And in addition to denying receipt of that letter, they offered evidence that called into question whether or not the letter was properly sent. We have an online confirmation saying that the letter was sent to a building's either mailroom or reception or front desk, no signature and the tag wasn't filled out. We have evidence of concurrently emailed and written letters that were sent to the wrong... Are you talking about the 2018 loss? Yes, talking about 2018. Thank you. And so at the summary judgment stage, we feel that enough evidence was generated that a jury should have determined whether or not this 2018 loss denial letter was actually received. The second bucket of evidence that warranted denial of summary judgment relates to Mr. Nassani's cooperation and submission to examinations under oath. Keep in mind, this is during COVID. It was undisputed below that it was actually the insurance company who agreed to postpone the examinations under successive occasions due to health reasons and the stay at home shutdown orders. With respect to the 2019 loss, though, there were requests for documents that were not produced. Absolutely. Which is different than not wanting to be in person for a deposition. And those were not produced. We have a classic dispute on that. There was the evidence by the insurance company that said you didn't produce what we asked you to produce. And then you have Mr. Nassani's declaration, Ms. Vargas' declaration and the declaration of their coverage expert, Mr. Zalma, who all said not only did we produce everything that we have, but it was sufficient for the insurance company, Amco, to develop its own in-house calculation of what should be paid. It crunched the numbers and it got a recommendation of what should be paid on this claim. And so there was a conflict in evidence there. And I think the trial court improperly weighed and found the insurance company's evidence was more credible. And then the third bucket of evidence that we have is whether or not the car wash was actually open in the final quarter of 2018. We have declarations by at least two witnesses, Mr. Nassani and his assistant, Ms. Vargas, that although the mechanical operations were shut down for repairs, the car wash was open for hand washes for three months. And there was conflicting evidence on this point. The insurance company said, well, hey, we see that your electricity and your water bills were less during that period. But this is a conflict of evidence that should have been resolved by the jury. And unless the court has any other questions, for those reasons, we think the brief was adequate. And those three buckets of evidence demonstrate tribal issues of fact. Well, you haven't addressed, with respect to the 2018 loss, the presumption that applies when mail is put in the stream of the post office and, you know, it's presumed to be received in the ordinary course. And how did you rebut that? So, Your Honor, there's two pieces to that. There's does the presumption arise and did we rebut it? And in terms of the presumption arising, I'll admit there was evidence offered by the insurance company that somebody sent it by certified mail and they think it was to the correct address. And that's pretty good evidence. But what you didn't have was a completed evidence or, excuse me, a tag or receipt showing that it was properly filled out. And you had concurrent evidence offered on the rebuttal part in terms of rebutting the presumption. You had concurrent evidence that these folks, the insurance company, used wrong email addresses and wrong mailing addresses. Well, why does the email even have to do with it? If a letter is sent and there's a presumption, the common law and California rule that proof of proper mailing gives rise to a rebuttable presumption of mailing, there doesn't have to be a second form. So if an email is sent or not sent or sent to the wrong address, why is that even relevant? Your Honor, you're correct. There's no requirement for email. Okay, so that piece of evidence is sort of irrelevant. If the letter arrived, it doesn't matter if there was an email. But let me suggest this, Your Honor. If we have evidence that an insurance company is using a wrong email address and a wrong mailing address in correspondence, there's an inference at the MSJ stage that the insurance company is not doing its best to deliver the mail. Well, who rebutted the delivery of the 2018 notice? One more time, I'm sorry. Who rebutted the delivery of the 2018 notice? The only evidence offered was Mr. Nassani's declaration, his executive assistant's declaration, and his outside counsel's declaration saying, we didn't get it. No, he didn't actually say he didn't get it. He said that he was unaware of the decision, which is sort of a weasel, weasel words in a sense, that it doesn't really say that it didn't arrive. It could have easily arrived and he didn't read it. That would also make him unaware. So what evidence is there of the mail handling, routing, or something that shows that it didn't arrive? Your Honor, they should have. It would have been better to have had a more fulsome declaration talking about the sorting process. Well, they didn't. And they didn't. So why is that rebutted? Because the three declarations taken together by Ms. Vargas, Mr. Nassani, and his outside counsel, that they were unaware of this document, coupled with... But why would they be confident? Why would the two people at the car wash be confident at all, given that that wasn't the notice sent to the law firm? Correct. But if they were unaware that the letter had shown up, there's an inference at the MSJ stage that if the lawyer had received this letter, he would have given it to his clients. And they would have taken action. Well, if he was doing his job, but isn't it equally possible? I mean, this is... It really struck me that the way of saying, gee, I wasn't aware of it, is quite different than saying, we have regular mail delivery with so-and-so, and they've never seen such a letter. It did not arrive. Your Honor, it's an ugly, terrible fact for me. But I would not, and I would not after trial, argue like an insufficiency of the evidence. But I think at the MSJ stage, where conflicting evidence and in terms of reasonable inferences, we're entitled to the reading of that lawyer declaration in the best, most favorable light to the non-moving party. And with that, I have two and a half minutes I'd like to reserve for rebuttal, please. All right. Thank you.   Good morning, Your Honors. Matt Kleiner on behalf of Amco Insurance Company. I have to apologize. Those first two appeals were very interesting, very complicated facts, and I hope that this is more of a simple set of facts to process. Going to the first claim from 2018, the district court properly denied that for failure to comply with the one-year limitations period to bring a lawsuit. They've been arguing against the mailbox rule, and if you look at the evidence that was submitted in conjunction with the motion for summary judgment, Amco more than satisfied its burden to show that the mail had been delivered. You have a declaration from Ms. Sanders who testified that she filled out a green certified mail slip, sent it to the address, confirmed with a phone call to the United States Post Office, and also printed out the tracking. The fact that the tracking printout only had the zip code and the city on it is something that isn't sufficient to rebut the presumption here that's been invoked. Is there any evidence that Amco had the incorrect mailing address? The first time I've heard that was in this argument today. They had the incorrect email address, but it was correctly addressed to Mr. Rooney, who was counsel for the plaintiff, and that's where the address was sent, and it was correctly addressed to Mr. Rooney. As Your Honor pointed out, Mr. Rooney merely testified in his declaration that he was unaware of what was in the coverage position letter. As also this court pointed out, the other two declarations. Well, he didn't quite say that either. He said he was unaware of the claims denial. Correct, but he did not say that he received it or did not receive the letter. And in order to rebut effectively the presumption that's established by the mailbox rule to show non-receipt, you have to give a detailed description of how your mail is received, how it's sorted, how it's distributed. There is no one who testified how Mr. Rooney's mail was sorted, received, and distributed, and there's no one who testified how, from Mr. Rooney's office, that a diligent search had been performed for that letter and had not been found. Mr. Kleiner, I'm curious about how our Federal Rule 56 interacts with the mailbox rule. So we do have California law sets forth a clear presumption, and we've been talking about whether that presumption is rebutted, but we've got an overlay of if we're going to deny a trial under Federal law, there has to be a genuine issue of material fact, and we have to draw the inferences in favor of the non-moving party. So what are we to do with that? Is somehow applying these presumptions where they have an obligation to do more than they've already done and everything's a little unclear, why doesn't Rule 56 override whatever presumptions exist under California state law with respect to this mailbox rule? Well, the mailbox rule establishes a presumption of delivery, and it has specific elements as to if you prove those elements, then you've created this presumption. Well, if you prove, but you're in Federal court, and so the way we prove things is going to trial. If there's a genuine issue of material fact, you don't get summary judgment even if it's proof of what are state law presumptions. Correct, but if you look here, there is no genuine issue of material fact as to any of the points. As the evidence that was submitted, they don't have any evidence that we, that Ms. Sanders didn't go ahead and fill out the information on the certified mailing slip and mail the delivery. There isn't anything to rebut the evidence as it relates to the confirmations that were received of delivery. There is no evidence to establish that. But the confirmations are all but illegible. How are we supposed to know in terms of this, or at least the copy we have in the record? Well, you have the declaration of Ms. Sanders who declares in her declaration what she did and how she filled it out and how she received the confirmations, Your Honor. So that authenticates those confirmations. The actual confirmation from the U.S. Post Office, again, it does show that it was delivered to the front desk at an address to the correct zip code and city that were on the letter. If I could ask a different question having to do with the 2019 loss, would you discuss the evidence concerning cooperation or lack of cooperation concerning that loss? Yes, Your Honor. So as to 2019, the district court correctly granted summary judgment finding that Linux had failed to cooperate and did not submit any documents this worth to claim, including a list of the items that were stolen, original invoices of the stolen items, estimates for repairs, photos, or even the police report number. Without these documents, AMCO could not perform evaluation as to what the amount of the loss was. There were multiple requests requesting this information, and it was never provided. In the briefs, Linux conflates information that was provided in the 2018 loss with the 2019 loss. They argue that Mr. They did cooperate in the 2018 loss, as I recall. There was more information submitted with the 2019 loss. Mr. Nassani set for an examination under oath as related to the 2018 loss, but that related to the 2018 loss. This is a different loss a year later for a different property. It can't be the same property because that property from the 2018 loss is presumably gone. The May 2019 date of loss that was referenced in the opening brief, if you look at the date on that as to the date of loss, not the date of the document, is from the 2018 loss. So there was no documentation that was submitted in order for AMCO to evaluate the value of the property that was stolen to process that claim. And therefore, AMCO sustains substantial prejudice as it relates to the 2019 loss. So therefore, the district court appropriately granted summary judgment on that point. Unless there are any other questions. Did I answer your question, Your Honor, about the genuine issue? Yes, you said the magic words. Okay, thank you, Your Honor. Anything further? Okay, thank you, Counsel. Counsel, this case baffles me because your client has insurance, had two burglaries, and they seem just not to follow through with the requirements of the insurance contract. And, you know, here we are. It just seems very baffling that they would not have, I mean, they had to hire an attorney that, you know, that nothing was done promptly. And the 2019 loss, there was no cooperation, even though there were at least five requests for specific information. So let me respond to that if I could. And I do want to correct, if I left the court with the impression that there was a problem with the mailing address for the 2018 loss, that was a misstatement by me. There were problems with the insurance company using bad mailing addresses for other communications to my client, but not regarding the 2018 denial. And specifically, page ER-122 of the excerpt deals with that. In terms of why are we here and why did he have insurance counsel but nothing was followed up on, I'll offer two things. One, some of this was during COVID communications. When you mail things to offices where people aren't at, that's hard. We also have the Vargas declaration that said a bad address was used for her in connection with a document request that the insurance company sent to her. And we also have this interesting issue where Mr. Misani declared that he signed the examination under oath transcripts, gave it to his lawyer. And there's a gap in terms of what happened to the signatures after that. So I'm not sure if there was a lawyer issue here or a COVID issue or a mailing issue. But I will say Mr. Misani's declaration does suggest that he did everything he could to have him and his assistant provide documents that were asked for. And unless there's any other questions, I'm prepared to submit on this record. All right. Thank you, counsel. Lennox Car Wash versus Amco Insurance Company will be submitted. And we are going to take about a five minute break before we take up the next and the last case today. And counsel, you can just get yourself set up while we're taking a break. Thank you very much. All rise. This court stands in recess.
judges: GRABER, WARDLAW, JOHNSTONE